ROBERT P. SMITH, Jr., J.,
dissenting:
In this worker’s compensation appeal the court affirms an order awarding claimant benefits for a 20% permanent physical impairment of the body as a whole. An insect bit claimant at her work in a gift shop. That work did not involve any risk of insect bites other than that encountered by anyone anywhere else in Vero Beach on that October day. Claimant’s existing hypersensitivity to insect bites increased because she was bitten, and on that account the deputy commissioner has awarded permanent disability benefits. I do not agree that claimant’s increased hypersensitivity to future insect bites is a “permanent impairment” for which Chapter 440 provides “disability” benefits, Sections 440.02(21), 440.15, nor that a 20% disability rating is sustained by the record.
Claimant is one of those thousands who are extraordinarily sensitive to insect bites because of immunological bodily responses acquired genetically and by antigenic exposures during life. Like most others so conditioned, claimant did not know of her hypersensitivity until she suffered a reaction to a particular insect bite or sting. Claimant happened to sustain that particular bite while arranging a display in the gift shop where she was employed, and she suffered a fairly severe antigenic response. The employer/carrier do not now contest that the bite was an industrial accident arising out of and in the course of claimant’s employment, nor that the resulting medical bills were properly payable by them. Since the only apparent causal relationship between the insect bite and claimant’s employment was that this particular insect would not likely have bitten claimant had she not been at work when the insect was there, the sufficient causal nexus is apparently attributable to “positional risk” doctrine. See Murphy v. Peninsular Life Ins. Co., 299 So.2d 3 (Fla.1974); Pickens v. Sam L. Rudd Leasing, USA, IRC 2-3741 (1977); 1 A. Larson, Law of Workmen’s Compensation §§ 10.10, 10.12 text at nn. 32, 33 (1978).*
Granting, therefore, that the employer/carrier were responsible for required medical treatment flowing from this insect bite, I think the benefits should have ended when claimant recovered and was able to return to work. But the deputy commissioner awarded and the court sustains benefits for a 20% permanent partial disability. The medical testimony on which this award *10 is predicated was extracted from a reluctant treating physician who plainly recognized that his offhand testimony, “[M]aybe you’d say twenty, thirty percent[,], I don’t know,” was not a considered medical estimate of permanent physical disability or impairment but was instead a guess at a numerical factor combining claimant’s chances of being insect-bitten again and her chances of suffering, in that event, a severe or disabling antigenic reaction. The medical witness testified, at some urging by the deputy commissioner,
Well, you know, you just have to sort of pull something out of the hat and say, you know, her chance is — you’ve had to consider her chances of getting a bee sting, and then what her chances are of having something really severe if she gets it.
The unexplicated formula for calculating disability was made more problematic by the need to reduce the probability of a severe reaction to any future insect bite (“I mean, that’s a hundred percent, I think, or so near that you couldn’t really break that down”) by the degree of added permanent hypersensitivity contributed by the unsuccessful and counterproductive desensitization treatments for which the employer/carrier were ordered to pay and did pay. The deputy’s order states, I think somewhat too sanguinely, that the rating awarded “does not take into consideration any injuries sustained by the claimant as a result of the bee desensitization program.” The order does not say how that added hypersensitivity was quantified and subtracted, and there is no testimony which would furnish a basis for that calculation.
In my opinion these calculations and the consequent finding that claimant sustained a 20% permanent disability compensable under Chapter 440 are composed more of alchemy than of law, medicine, or any defensible theory of probabilities. Claimant has no “anatomic or functional abnormality or loss” as a result of this insect bite, Section 440.02(21). She is, instead, rendered by this bite more susceptible than previously, which was very susceptible indeed, to disability from an insect bite. Claimant has recovered from her disability caused by this particular bite, and her residual susceptibility to repeated disability by another insect bite is not, in my opinion, a present disability. Claimant is not unable to return to this work or any other work as a result of this industrial accident, though of course she should avoid both work and leisure which exposes her unnecessarily to insect attacks. Clerking in a gift shop is not particularly risky in that respect. There is no evidence, and no contention, that claimant sustained a diminution of wage earning capacity.
Not only is claimant not disabled by being more hypersensitive to insect bites; neither was her increased hypersensitivity caused by a risk of her employment. The “positional risk” doctrine may justifiably compensate an employee for disabilities caused by risks encountered in fact on the job, even if those risks would have been encountered elsewhere to the same degree; but absent a present disability I would not further attenuate the “positional risk” causation doctrine by supposing that it was a job hazard (the offending insect) rather than claimant’s body chemistry which caused her present vulnerability to future bites. If the nature or conditions of claimant’s employment had in any way increased the risk that claimant would be insect-bitten as she was, or if this job had exposed claimant, beekeeperlike, to an occupational disease of aggravated antibody response to insect serum, Section 440.151, or even if claimant’s present susceptibility were attributable to the insect she in fact encountered at work rather than to her progressive sensitivity to any insect’s bite, one could more readily recognize a causal relationship between the risks of claimant’s employment and her present vulnerability. But none of that is the case.
In my opinion this award is exactly equivalent to granting claimant in periodic payments the actuarially discounted benefits of a health insurance policy conditioned to pay claimant in proportion to her present wages and the severity of her probable illness if claimant is ever again bitten by an insect. Unlike other persons whose body *11 chemistry makes them allergic to insect bites, and who would find similar comfort in such health insurance as this, claimant receives these benefits in futuro because she was insect-bitten at work, although she has recovered from the resulting disability and neither the insect in futuro nor claimant’s hypersensitivity to its bite was created by the occupational risks of clerking in this gift shop. I do not think worker’s compensation benefits can be stretched to such extraordinary lengths. See Southern Bell Tele. and Tele. Co. v. McCook, 355 So.2d 1166 (Fla.1978).
In Plantation Construction Co. v. Ayers, 385 So.2d 1138, 1139 (Fla. 1st DCA 1980), another panel of this court rejected a deputy commissioner’s “apparent conclusion that the likelihood of a further recurrence of bacteria-caused ear infections, if claimant continues to dive, may be classified as a ‘physical impairment.’ ” I think that case was well-decided and that, for what appear to me to be the similar but stronger reasons here, the chancy calculations indulged in this case do not make out a 20 percent permanent disability. I would reverse.

 See Larson, op. cit. § 10.00 at p. 3-65:
An increasing number of courts are beginning to make awards whenever the injury occurred because the employment required the claimant to occupy what turned out to be a place of danger. A few frankly state that causal connection is sufficiently established whenever it brings claimant to the position where he is injured.
Murphy sustained an IRC reversal of a JIC compensation order expressly predicated on the theory described by Larson, and said, 299 So.2d at 4:
[T]he injury resulting to the claimant must be a reasonably foreseeable consequence of fulfilling the duties of the employment.